We'll call the matter of Reefco Services, Inc. v. Government of the Virgin Islands. Ms. Sinclair. Good morning. Dionne Sinclair on behalf of the Government of the Virgin Islands and the Bureau of Internal Revenue. I'd like to reserve three minutes for rebuttal. Granted, let me start off, if I may, because I've noted that, and correct me if I'm factually incorrect on this, the amendment to the statute occurred when? 1984? The amendment to the statute followed JDS, I believe it was 1984. And there was then no implementation of regulations until, during the pendency of this case, about November of last year? November of 18? In November of 2018, the manufacturers, the accountants, the attorneys met, and it was a rigorous process. The regulations came out in February of this year. Ms. Sinclair, as an onlooker, that sequence of events, or some might characterize it as non-events, is passing strange. Can you explain it? You know, I can't. And I understand why it would seem unduly protracted. But I think the reality of what happened here in the Virgin Islands is manufacturers that were manufacturing actually on island, within the territory, the bulk of them received exemptions. And because so many of them had exemptions, you know, if you name one, it had an exemption. Because of that, the rules and regulations were not promulgated for largely what was left were very small mom-and-pop operations, very, very small in numbers. So it was not a question of delay or avoidance of the statute itself. It was just that... Just out of curiosity, was there ever any inquiry by any governmental entity as to why, I assume, the rule-making process is carried out in this case by the VIR? Is that correct? Or should have been? Yeah. Pursuant to the statute, it was the Bureau of Internal Revenue who had to promulgate the rules and regulations, primarily because they're the one with the expertise in which to do that. So, recognizing that the unicameral legislature here had no formal role in the Organic Act or any of the amendments to the Organic Act, but certainly has an interest in the generation of revenue for the benefit of the VI, was there ever any inquiry from the legislature as to why this was not occurring? I actually cannot speak to that. That I do not know. But I will just, in response to the generation of revenue, which is clearly an issue and an overwhelming interest for the government, that speaks to how few local manufacturers remain following the manufacturers that had exemptions. I mean, the large, large manufacturers were largely EDCs, and they were exempt. Hovenza was exempt. Diago is exempt. Cruz & Rum is exempt. LimeTree is exempt. LimeTree is the successor to Hovenza. To Hovenza. Correct. So what you're dealing with now, and when I say mom and pop, I mean someone who imports essential oils and turns it into hair products or soap. Someone who makes guava berry juice. Someone who maybe are the same. So the biggies are exempt and not generating tax revenues for the island? Well, I guess they generate revenues in other ways. I don't know all the details, but what I do know is with respect to excise tax, which only speaks to imports and manufactured items, right? So with respect to excise tax, I think the IRB had, following this ruling by the lower court, and all the things they did to try to get these rules and regulations in place, it came up with, there were 142 local manufacturers. Of that, I don't have the exact number, but only a small number would actually be paying excise tax. And then of that, I don't have the exact number, but only a small number would actually be paying excise tax. So I don't think that the amount of excise tax would be negligible. I mean, I think in terms of, I just had asked how much excise tax was lost to the territory, just in terms of this injunction through December 1st of 2019, and that amount was $47,442,194.81. And doesn't that just demonstrate how it was sort of short-sighted not to come into compliance in 1984? Because you're asking us to explain away the delay because so few were impacted, but the decision not to act apparently has had this consequence. It's significant value to the islands, right? Well, it's significant value to the islands. What I'm saying is the additional excise tax that would come beyond the $47 million is, at best, negligible. At best, maybe $100,000. That's my exact point, that the decision not to, and it was a decision not to come into compliance with the statute, and this Court's prior ruling of the need to ensure that the excise tax treats both items brought into the island and those brought manufactured on the island equally has had a tremendous impact. So let me ask you this. Let's assume we vacated the declaratory judgment, hypothetically, and the injunction. Are you going, is the island going to go back to the pre-regulation tax collection process? No, and if I, I just need a minute to, because I learned yesterday, and just in case the Court is not up to speed as well, on Friday, the lower court issued a ruling on, we made a motion to lift the injunction in November. The rules and regulations were promulgated in accordance with VI law, fully, in effect, governor signed it, went to the legislature, promulgated in February of this year. On Friday, the lower court issued a ruling whereby they proclaimed that the new rules and regulations were unconstitutional. And one, they, yes, and advocated a sales price excise tax. That just seems, within the, the reading of the, of the order issued by the lower court, that just seems to be mass confusion as to what the rules and regulations stated in terms of how and why these excise taxes are unconstitutional. So, let me get this straight. So, for a short period of time, there were regulations in effect, but as of Friday, there are not, by virtue of the court order? Right, let's be clear. The regulations were promulgated in February of 2019. The Court refused to lift the injunction. In effect, right. And if you read the order by the lower court, it determines that the rules and regulations were proposed, like a proposal, and it's almost as if it's given an advisory opinion as to whether they're constitutional or not, which is not, in fact, the case. These are legally promulgated rules and regulations for the territory, by the territory, in accordance with VI law. When was Hodge's testimony? I mean, I hope this is coming clear, but I'm getting feedback on my side, even, so it's probably enough, and I apologize. There's an excerpt in the brief of an exchange with Mr. Hodge from the VI Revenue Bureau that basically says, well, the regulations are there, but we don't enforce them. When was that testimony? What is he referring to? The regulations were not there prior to February of 2019. Mr. Hodge testified twice, though. If we're talking about the April testimony, he may have been talking about these new regulations that we were unable to enforce. But Mr. Hodge testified as to the methods and just the background work that went into arriving at these new regulations. And if I may, I think we need to look at this system for taxing of local manufacturers. Because, you know, here it's a little different than the normal cases that have to do with, you know, outside items coming in, because it really is just importers versus local manufacturers, if you will. Right? So it has nothing to do with outside manufacturers. It really is people who import for resale or for use, for business purposes, and also people who actually work for the local sector. People who manufacture locally, both placing these items in the stream of commerce. And then the background as to when to apply the tax when they go into the stream of commerce took a lot of time. Because the local court's proposal of actually at the time of sale was considered and then rejected, because when we ran it through, there was a double taxation. Because people were taxed at the time of import and then taxed again at the time of sale, and it was not equitable with the people who merely imported and then utilized, or imported and then resold. So it took a lot of background, back and forth, in order to get these rules and regulations together. And the order that came out on Friday, it conflates so many terms in arriving at, you know, the rules and regulations. You know, the opinion that it is somehow further not constitutional. Cost price, sale price, value price, all melded together, and they're not the same. Under this current state of affairs, then, if we were to affirm the district court, no sales tax, no, I'm sorry, no excise taxes are being collected, the injustice is in effect. And you'd go back to the district court to try to convince the district court that the regulations cure the problem? Is that what's going to happen? Is that what's going to happen next? Well, it seems, from the order, it would seem that it would have to be yet another round of motions, I guess, to try and see whether these new or amended regulations could be in compliance with what the local court has proposed. And I don't know what the local courts want. However, I will note that advisory opinion is just improper. And because the rules and regulations were never put into effect, the local court never even had an opportunity to try and iron out the methodology, which is normally what would take place. And it's what the Supreme Court always repeatedly has held. But wasn't one of those regulations put in front of the district court after the injunction was put into play in an effort to get relief from the injunction? And as I understood it, there was a request the district court opined as to whether these regulations satisfied the concern that the court had on the Commerce Clause problem. That was not our request. It was the lower court essentially saying, you must come to me and present me with rules and regulations, and I will opine whether these are in compliance with the Commerce Clause. And it was not our request. It was never the intent of the government to have to somehow get an advisory opinion before it can issue rules and regulations that comport with all the tenants of the Commerce Clause. The agency itself, because the Bureau, you know, coming up with methods for taxation is not easy. And so the Bureau, through rigorous meetings and back and forth with various manufacturers, has been very careful not to do that. With the importers, with the attorneys, with the accountants, came up with this system, and the confusion that seemed to have come out of it being put before the lower court without maybe the same expertise and without the deference that's normally given to an agency, particularly an agency with such specific knowledge, I think brings this problem more to light. Also, the timing, as I mentioned, this motion was, our original motion to lift the injunction was done in November. The rules and regulations, following, let me back up, following the motion that was done in November, the lower court was kept abreast of the procedure that was going on, told of the meetings that were taking place, told of the various options that were being considered, and there was no movement. Then after that, the rules and regulations were implemented, the rules and regulations were promulgated, not implemented due to the injunction, and those were forwarded also to the district court, just so, you know, to say, look, these are the rules and regulations pursuant to your order in November, please lift the injunction, that motion is still open. There was no response, and then, in fact, in September of this year, it was taken off the calendar, so it was a surprise that this decision even came out on Friday. You have, I'm not quite sure, in your presentation to us, you're conceding because this clause applies to this now, is that correct? If somebody could maybe, I could. Do you need to have it repeated? Yes, thank you. Yes, I had, in part of what you said, you were conceding that the Congress clause applies to the version owned, is that correct? At this point, I really think it's moot. The rules and regulations have been promulgated. The government has no intention of going back to a period of time when they were not in effect. And now we just seek to have the rules and regulations put into effect, the injunction lifted, and excise taxes able to be collected. The regulations aren't in front of us. Exactly. I don't know, frankly, what the term moot actually means for our purposes right now. We have an appeal before us. It involves issues that have been specifically raised. What you indicate in the way of recent events is news to me. I knew nothing about a Friday decision. And frankly, I think it was incumbent upon counsel for both parties to have brought that to the court's, this panel's attention in advance of today's argument. That said, let's get to the issues that are supposedly, that are in fact directly before us, the most important of which is the Commerce Clause issue. And as Judge McKee, consistent with what Judge McKee asked, have, are you arguing in your brief that you believe polychrome was wrongly decided? In my brief, I was arguing that we believe that it was wrongly decided with respect to the Virgin Islands, because in so many ways, it was wrongly decided with respect to the Virgin Islands, albeit under the revised Organic Act, certain powers are given to the territory through an act of Congress. But in so many ways, the territory is treated in a manner not consistent with states. That is why we brought the cases from the Ninth Circuit, where they also deal with territorial... The point is, at this juncture, the situation that existed when this suit was first brought is no longer the case. The rules and regulations at this point have been promulgated. They are promulgated in a manner that is even-handed and sought to deal with importers and local manufacturers in as even a fashion as the government could. If we were to decline to reach squarely the question as to whether the Commerce Clause applies here in the Virgin Islands, doesn't polychrome provide us with all the tools, if you will, necessary to decide this case? I will say within the Third Circuit, the decision... Right. So within this circuit, yes, it seems to have been or it has been the standard and it has been followed continually. I will point out, though, that the Supreme Court in the recent decision of Balboni, the local Supreme Court, the Virgin Islands Supreme Court, took a position that was contrary to the Supreme Court with respect to rights. I think Fourth Amendment rights in that case. I forget. I think it was Fourth Amendment. And the Supreme Court, yes, they declined cert. So I don't know, really, if... I understand that within this circuit, yes, that that is the law, but it does seem that there are variations on how the territory can define clauses and rights that apply here. But again, that's not a live issue now before this Court due to what has transpired in the past. Both in the promulgations of the rules and regulations and now in the opinion issued by the lower court. With respect, though, to the monetary judgment that was awarded, that remains consistent with what happened before. And so it's a live issue. As a result, we have before us whether or not the district court properly declared the statute's way of being enforced by the territory. As whether it complies with the Commerce Clause. So we still have a live Commerce Clause issue in front of us, correct? Right. But with respect to that monetary judgment, whether or not the Commerce Clause applied, the argument on behalf of the government is that the money that was paid with respect to the excise tax was baked in the cake, so to speak. Because that money, as a non-end user, that money was rolled into the cost, and that money was paid to the district court. And that money was charged by the business to whomever... Is there anything in the record to support that? Within the record, I think all of it was limited. And within the record, all I can recall are just receipts for excise taxes. There didn't seem to be any inquiry done about it. Judge McKee, do you have any questions? I'm glad to hear I'm not alone. No, you're not. I would like to get a transcript. I'd like to get a transcript of this argument. I think that would be appropriate. What are you asking us to do today? Okay. Or are you asking us to rule any differently from your initial request in your briefing as a consequence of the recent ruling by the district court? Well, the government is still asking that the injunction be lifted, that the rules and regulations be placed into effect. And that the territory be permitted to collect excise taxes. I believe that that is proper on a number of grounds. The first, not only that the rules and regulations comport fully with the Commerce Clause, but also that an advisory opinion as to the constitutionality of rules and regulations is just improper. We all know that is a very, very basic proposition of constitutional law. We haven't even heard from your adversary yet, but let me say this right now. We're going to direct both of you to submit supplemental memoranda addressing the recent decision by the district court and what it said and how, if in any way, it changes, shifts the playing field in this case for our purposes. So we'll have you back on rebuttal, Ms. Sinclair. Mr. Strickling. Good morning, Your Honors, and may it please the Court. I'm Taylor Strickling here arguing on behalf of the Appalachian Plaintiff Reef Coast Services. Although this case is high profile in the territory because of the amount of money at stake and because of its strong newsworthiness, the legal questions here are actually quite routine. What we have here is a precedent of over a quarter century of age that the government in this case is attempting to disturb, which says that Commerce Clause principles, Commerce Clause doctrine, are binding upon the government of the United States of the Virgin Islands. The district court, do I recall correctly, did not even really address polychrome in its opinion? In the September opinion, yes. In the November opinion, that is correct. But he clarified in the November opinion. I think, frankly, the district court thought it was obvious that the imposition of Commerce Clause principles derived from the precedential opinion in polychrome. And it relied on the JDS opinion to the extent that it was persuasive because that focused on the excise tax in particular. And those Commerce Clause principles themselves are applicable in a very straightforward fashion in this case. Taxing the importation and not taxing local manufacturing is just black letter Commerce Clause discrimination. And as the court here in JDS said, it's just as clear cut as you can come in terms of what constitutes discrimination. There are only two ways that the government could justify this sort of discrimination. The first is if there was a, you know, compelling local interest that there was no other, you know, means to. Was that argument even made? It was not even made. They didn't even try to do basically complete auto factors? Correct. I mean, we're focusing just on the discrimination prong of the complete auto, but they did not attempt to say there was any sort of compelling interest in this case. I don't even think they could have. I mean, they attempted in JDS to say, oh, we're, you know, there's revenue generation at stake, which is not a valid local interest in of itself. But here, because they were actually acting or not acting in the teeth of the territorial law, there couldn't even be a legislative purpose behind this particular policy for them to defend. So the other way that they could possibly justify this discrimination of the Commerce Clause is to show that there is a particular discrimination that is occurring here. And that's just impossible to do in this context. I mean, looking at the history of the Virgin Islands in general, you can see right from the beginning that Congress permitted one particular form of discrimination when it allowed for the customs regime, then existing under the Danish laws, to proceed. And then in the 1932 Act that we cited in our brief, permitted additional internal revenue taxes to be applied with the express condition that the goods that are imported be treated in the exact same fashion that goods are local manufactured. The Internal Revenue Code has a similar provision with respect to United States manufactured goods and Virgin Islands manufactured goods, where it says that imports from the United States must have the Virgin Islands internal revenue rates applied to it. Before the ruling on Friday, my question goes to mootness. For the purposes of this question, assume that ruling hadn't come down and you were still serving a status quo, sort of a freeze frame in the district court. I understand your argument concerning mootness on the refund. You've done money damages that they would try not to have paid in your client's direction. Do the presence of the regulations, had they been not disturbed, let's leave it at that, had not been disturbed, would that have mooted out any portion of your claim? I don't believe so, Your Honor, just because, and, you know, I'll explain in the requested memorandum, but the proposed regulations which were presented to the district court in the context of a motion to lift the injunction, which motion was made in February and the regulations not, you know, allegedly promulgated until February, those regulations had multiple defects. The largest one being the one that the district court on Friday chose to focus on, which was that although they implemented an excise tax on local manufacturing, they chose to apply the excise tax rates only against the cost of manufacturing, whereas they continue to apply the same rates at the higher sales price of imports, which is just a clear imbalance between the type of thing, the tax basis that is being taxed. Do we need to reach that? Do we have to make it? I don't think we need to reach that here. I expect the government is presently deciding whether or not to appeal that denial of the motion to lift the injunction, and we may be discussing this at a future round. And there were, like I say, probably half a dozen other defects with the, you know, government's proposal that would allow. But that wasn't your argument before us on the mootness issue as it was discussed in the briefs. There was no claim that these regulations are defective and therefore won't moot it. It wasn't, unless, and correct me if I'm wrong. No, no, no. That argument was not made, am I correct? That's correct. That's absolutely correct. Okay, so then the only other ways to avoid a mootness claim then would be under a theory that this claim remains live on the declaratory judgment, not the money damages, but the declaratory judgment because the government has an interest in enforcing its laws, and right now they have on the books a declaration of unconstitutionality, or at least in how the law is being implemented. And so it still remains live because if they prevail, they can go back to the old way of business, put aside the regulations. That's quite right, yes. I understand. Thank you. Yes, Your Honor. Picking up on the line of argument, the Congress in this case has tended to demonstrate an intention for the Virgin Islands to be treated as a single unified market, with the one exception that they expressly permitted in terms of the customs duty. And the government has found only one other purported permission given by Congress that would allow for this excise tax to be applied in a discriminatory fashion. And that is the 1980 Act in which the Congress simply allowed for a particular collection methodology where the excise tax on imports could be collected at the dock rather than having to wait for a longer time. And the doctrine is quite clear that no sort of deviation from Dormant Commerce Clause baseline is to be permitted unless Congress has been express and unambiguous. And there's nothing about the 1980 Act that is at all express or unambiguous. With respect to the polychrome precedent itself, as I said, this is a precedent that's been in effect for over 25 years. There is, you know, no reason to reconsider at this point. In order for a precedential opinion like this to be reconsidered by the Court, we can't. You'd have to go through the en banc process. This was my first. So polychrome stands. My question, though, is similar to the one I asked of Ms. Sinclair when I asked her about polychrome providing all the tools necessary to deal with the question at hand. I similarly ask the question of you and ask it simply in different phraseology. And that is, practically speaking, is polychrome's ratio de sende leading us to any different result than what we would reach if we said flat out the Commerce Clause applies? No. Polychrome is 100 percent sufficient in this case. The difference between the Commerce Clause acting, forgive my Latin, proprio mutu, and it acting, you know, implicitly via Article IV Territorial Clause is, you know, a distinction without a difference. You can see that directly in polychrome itself. In fact, after the Court determined that principles of Commerce Clause doctrine apply, it immediately proceeded to do a very in-depth analysis under all the factors of the auto transit test, showing no deviation whatsoever from black letter Commerce Clause doctrine. And furthermore, as it has been applied in the district court to the extent that that's persuasive since polychrome, the district court has had a similar approach following that lead in polychrome of using standard black letter dormant Commerce Clause doctrine in its application. Your Honors, I feel that, you know, makes the case I want to make if there are further questions I should have. Judge McKee, do you have any further questions for Mr. Strickling? I have none. Thank you. If not, thank you very much, Mr. Strickling, and we'll hear from Ms. Sinclair. Ms. Sinclair. Just as a bit of background, the lower court had initially struck from plaintiff's complaint all allegations of Commerce Clause and dormant Commerce Clause. The parties agreed to submit on the record for a decision, and it was only within that decision that it was resurrected. In fact, the parties agreed to a trial on the record. Right, right. So this was never briefed, Commerce Clause, and it wasn't briefed in the record because it was taken out and then put back in. But just with respect to where we stand now, with the intervening change of the rules and regs, and there is no possibility of the government going back to no rules and regs, with respect to Commerce Clause or dormant Commerce Clause in the collection of excise taxes, that issue is moot. At this point, we would just seek to have the injunction lifted and the rules and regs actually placed into effect. Any issues with the methodology as to the procedures as set forth in the rules and regs should first come before the VI court, and then following that, it would go to a federal court for any kind of review. All right. Thank you very much. All right. If it was done. Had you completed? I didn't want to interrupt you. No, that's fine. I am done. Thank you. Thank you very much. All right. All right. Thank you, counsel. Just to repeat two matters. Number one is the request that we have a transcript prepared of the oral argument. Secondly, that the parties separately provide the court, each provide the court, with a supplemental memo as to the recent decision of the district court and its implications, if any, for the matter and issues before us appeal, and that that memo be filed by midday, by noon, on December 30. That's three weeks out. I think that's Tuesday, but I'm not sure. I don't have a calendar in front of me. Maybe it's a Monday. It's a Monday. Anything further? No. If not, thank you, counsel. This is a rather nettlesome case, one with a history. We'll do our best. Thank you. We'll ask the clerk to adjourn the proceedings.